FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

2016 FEB 10 PM 4:43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

GALLERY RESTAURANT GROUP, LLC
and BURRITO GALLERY & BAR, LLC,
each Florida limited liability companies;

Plaintiffs,

CASE NO.: 3:16-cv-135-J-32PDB

v.

REM COUSINS, LLC, a Florida limited
liability company; MARCO V. MONROY,
an individual; EDDY E. ESCRIBA, an
individual,

Defendants

_______________________________/

**COMPLAINT**

Plaintiffs GALLERY RESTAURANT GROUP, LLC ("Gallery") and BURRITO GALLERY & BAR, LLC ("Burrito Gallery"), by and through undersigned counsel, sue Defendants REM COUSINS, LLC ("REM Cousins"), MARCO V. MONROY ("Monroy") and EDDY E. ESCRIBA ("Escriba"), and state:

**JURISDICTION, PARTIES AND VENUE**

1. This is an action for Trademark Infringement under 15 U.S.C. 1125(a), Common Law Trademark Infringement, and Florida's Deceptive and Unfair Trade Practices, Fla. Stat. § 501.201, *et. seq.*, and for Determination of Registration Rights under 15 U.S.C. § 1119. Plaintiff further seeks money damages for breaches of a licensing agreement, breach of fiduciary duties, and unjust enrichment as well as an accounting, declaratory and injunctive relief related to the improper use of Plaintiff's marks.

2. Plaintiff Gallery is a Florida limited liability company doing business in Florida with a principal address of 21 East Adams Street #100, Jacksonville, Florida 32202. Gallery is the sole manager and member of Burrito Gallery.

3. Plaintiff Burrito Gallery is a Florida limited liability company doing business in Florida, and nationally by means of www.burritogallery.com, with a principal address of 21 East Adams Street #100, Jacksonville, Florida 32202.

4. Defendant REM Cousins is a Florida limited liability company doing business in Florida with a principal address of 1333 3rd Street North, Jacksonville, Florida 32250.

5. Defendant MARCO V. MONROY is an individual, *sui juris*, residing at 1241 North Market Street, Jacksonville, Florida 32206. Monroy is the manager of REM Cousins and is believed to hold a 33% interest in REM Cousins.

6. Defendant EDDY E. ESCRIBA is an individual, *sui juris*, residing at 354 West 7th Street, Jacksonville, Florida 32206. Escriba is believed to hold a 33% interest in REM Cousins.

7. This Court has original federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 133 and 1338. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims arising under the laws of the State of Florida.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because *inter alia* the facts giving rise to the acts or omissions alleged herein took place in this District and/or because Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### Burrito Gallery and the "Burrito Gallery" Marks

9. Opened in 2004, Burrito Gallery is a unique and trendy restaurant located in the heart of Jacksonville, offering famed burritos, tacos, and other fresh Mexican food in an atmosphere

featuring music, local art and a full-service bar. The restaurant, and its name "Burrito Gallery," have since become immensely popular and well-known for its original and fresh Mexican food, fresh-made hot sauces and unique menu. Burrito Gallery has expended considerable sums in the promotion and use of its name and common law trademarks which include:

a. Burrito Gallery & Bar;

b. The name "BG Gallery";

c. Any variation of the name "Burrito Gallery," including "Burrito Gallery Express";

d. "BG" as an abbreviation for Burrito Gallery;

e. The name "BGX" which stands for Burrito Gallery Express;

f. The name "BG Green" which is a sauce sold by Burrito Gallery;

g. The mark used on www.burritogallery.com described as "the Burrito Gallery name creatively incorporated in a colored skull design made of burrito and other ingredients.";

h. The process used by Burrito Gallery to prepare its burritos; and

i. Burrito Gallery's menu items (collectively, the "Marks").

10. Burrito Gallery is the owner of these publicly known Marks, under which it operates and promotes its restaurants. Burrito Gallery has used the Marks since 2004 and continues to use the Marks in its restaurants and on its website, which are known both locally and nationally via www.burritogallery.com. At all times, Burrito Gallery has used its name and Marks consistently and protectively has worked to defend such assets through licensing and other agreements referenced herein.

11. The Marks have been extensively advertised and promoted throughout Jacksonville, and nationally through Burrito Gallery's website, with great financial and time resources devoted to

each. Plaintiff considers its name and the Marks as assets of great value and an embodiment of Burrito Gallery's goodwill, services, restaurant and menu and each asset has met with popular public approval as a result of extensive advertising, publicity and food service.

12. An example of Burrito Gallery's Marks, including a depiction of its restaurants, menu, name and website, are attached as **Exhibit "A"** and incorporated by reference herein. The name "Burrito Gallery" and the other Marks have come to mean and are understood to mean Burrito Gallery and Burrito Gallery's restaurants and food service, including an indication of its menu and freshness. The name "Burrito Gallery" and its Marks are distinguished from the services of other offering similar services. This is true throughout the United States, including the State of Florida and Duval County, Jacksonville.

13. Burrito Gallery is actively working to expand its brand and intends to franchise to other locations throughout Florida and the United States. A new Burrito Gallery restaurant recently opened in Jacksonville pursuant to a licensing arrangement and additional restaurants are currently in development.

14. Burrito Gallery is owned and operated by Gallery Restaurant Group, LLC ("GRG"), a Florida limited liability company that serves as the sole member and manager of Burrito Gallery. GRG owns and operates other restaurants across Jacksonville, including Uptown Market & Deli, LLC.

**Defendants' Unlawful Use of the Marks and the Parties' License Agreement**

15. In 2010, Escriba and Monroy, who each were 20% members of Gallery at the time, formed REM Cousins for the purpose of opening and operating a small Burrito Gallery in Jacksonville Beach, which they intended to call Burrito Gallery Express or BGX. On information and belief, Oscar Rodas, a local physician, participated in the formation of REM Cousins by

providing startup funding and owns a 33% share in the entity. Neither Gallery, Burrito Gallery, nor the other members of Gallery were made aware of Escriba and Monroy's plans.

16. REM Cousins opened and began to operate the restaurant at 1333 Third Street North, Jacksonville, Florida 32250, using the name, theme, menu items and other Marks owned by Burrito Gallery, to capitalize on the goodwill and value associated with the Marks as developed and promoted by Burrito Gallery. Defendants opened their restaurant and began to use the Marks for their exclusive benefit without the knowledge and consent of Gallery, Burrito Gallery or the other members of Gallery.

17. On discovering the unlicensed use of the Marks, Gallery and Burrito Gallery immediately demanded that Defendants cease their unlicensed operation and unauthorized use of the Marks in connection with the beach restaurant. Following discussions, the parties here reached an agreement whereby Burrito Gallery would grant REM Cousins a limited license to use certain of the Marks in connection with the Jacksonville Beach store. Specifically, REM Cousins was granted a license for its single location to use the "BGX" and "Burrito Gallery Express" marks, and to use the trade dress and menu items of Burrito Gallery. A copy of the License Agreement, executed on May 17, 2010, is attached hereto as **Exhibit "B"**.

18. Importantly, in the License Agreement, Defendants expressly acknowledged Burrito Gallery's ownership of the Marks, including the name "Burrito Gallery" and its derivatives, as well as the food preparation process and Burrito Gallery's menu items. In exchange for the license, REM Cousins agreed to pay Burrito Gallery a monthly licensing fee in the sum of 7% of its total monthly sales. REM Cousins agreed to provide Burrito Gallery with monthly financial reporting; the failure to provide the monthly financial reports would constitute a default under the terms of the License Agreement.

19. Escriba and Monroy, as individuals, further agreed to and acknowledged their fiduciary duty to GRG and Plaintiff. *See id.* In connection with this duty, Monroy and Escriba agreed that they would not "attempt to utilize any potential business opportunity that may arise and that could be used by Gallery or its subsidiaries, for their own personal gain." *See id.*

20. In the event of any default under the License Agreement, REM Cousins, Monroy and Escriba agreed that Gallery and Burrito Gallery would have at least two remedies. First, Burrito Gallery could revoke REM Cousins' license to use certain Marks and REM Cousins agreed to immediately cease all use of the Marks or "any name designed to draw upon the goodwill of the Burrito Gallery names." Second, on demand by Gallery following any default, Escriba and Monroy agreed to sell their interest in Gallery for book value determined as of January 1st of the year of default.

**Defendants' Breach of the Licensing Agreement, Infringement on Plaintiff's "Burrito Gallery" Marks, and Misrepresentations to the USPTO**

21. On or about January 19, 2016, Gallery and Burrito Gallery discovered that REM Cousins registered the "Burrito Gallery" mark with the United States Patent and Trademark Office ("USPTO") on April 1, 2015. The USPTO issued a Notice of Allowance to REM Cousins for use of the "Burrito Gallery" mark on October 13, 2015. A copy of the Notice of Allowance is attached as **Exhibit "C"**. This registration was undertaken without Gallery or Burrito Gallery's knowledge or consent and was intentionally concealed from them.

22. At no time did Defendants advise Gallery or Burrito Gallery of their secret registration of the "Burrito Gallery" mark. The License Agreement plainly establishes Burrito Gallery's ownership of the "Burrito Gallery" mark REM Cousins registered, evidences Burrito Gallery's intention to retain that ownership, and shows the limited scope of the license granted to REM Cousins, which does not include the right to register the marks subject to the granted license.

23. In connection with the application for the federal trademark, REM Cousins, acting through its manager Monroy, falsely swore to the USPTO the following declaration:

> The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

REM Cousins' statement to the USPTO, in the face of the express terms of the Licensing Agreement which acknowledge Burrito Gallery's ownership of the "Burrito Gallery" mark, constitutes perjury and fraud on the USPTO.

24. On February 3, 2016, Hank Holbrook, counsel for Gallery and Burrito Gallery, sent a notice of default to REM Cousins, advising of the discovery of REM Cousins' deceit. The February 3 letter demanded that REM Cousins immediately cease and desist all use of the Marks and advised that the License Agreement was immediately terminated. The February 3 letter further advised Escriba and Monroy that Gallery intended to exercise its right to purchase their interests due to the default of the license agreement and their individual breaches of duty to Gallery. On February 10, 2016, Gallery repeated its positions as to Escriba and Monroy by letter which included checks in

the amount of the book value of their interest in Gallery as of January 1, 2016. A copy of the February 3 and each February 10 letter is attached as **Composite Exhibit "D"**.

25. Representatives of Gallery and Burrito Gallery met with Defendants on February 1, 2016 to discuss REM Cousins' actions. During that meeting, Monroy and Escriba threatened Gallery and Burrito Gallery, stating that there would be "no negotiation" and demanding that Burrito Gallery buyout Rodas' interest in REM Cousins, after which there would be further discussion about the use of REM Cousins' falsely registered mark and a renegotiation of the Gallery operating agreement. Having attempted to resolve the dispute short of litigation, Burrito Gallery was forced to file this Complaint and to hire the undersigned attorneys and is obligated to pay them a reasonable fee for their services in prosecuting this action.

26. As of the filing of this Complaint, REM Cousins continues to intentionally and improperly use the Marks in connection with its restaurant, in open defiance of Gallery and Burrito Gallery's rights.

27. The marks being used by the Defendants are identical or confusingly similar to Burrito Gallery's Marks. Examples of Defendants' use and depiction of the Marks is attached as **Composite Exhibit "E"**.

28. Defendants' unauthorized use of the Marks is an intentional attempt to confuse the public into believing the Defendants' restaurant and services are associated with Burrito Gallery's restaurant and services.

29. Defendants' intentional use of the Marks is causing substantial customer confusion as to the sponsorship of the restaurant and services, and harming the reputation of Burrito Gallery's business and Marks. Defendants are intentionally trying to palm off and steal the name and reputation of Burrito Gallery's restaurant and Marks.

30. Defendants, when operating beyond the scope of the License Agreement, are direct competitors of Plaintiff.

31. Burrito Gallery has continuously used the Marks in commerce since 2004, a fact known to Defendants Escriba and Monroy and, through them, REM Cousins. Though it should not have been in dispute, Escriba and Monroy acknowledged Burrito Gallery's ownership of the Marks in writing in 2010. *See* Exhibit B.

32. All conditions precedent to the bringing of this action have been performed, satisfied and/or waived.

**COUNT I**

**(Federal Unfair Competition, False Designation of Origin and Trademark Infringement Under 15 U.S.C. §1125(a) – Damages)**

33. Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as if fully stated herein.

34. This is a claim for damages under the Lanham Act, 15 U.S.C. § 1051 *et seq* by Plaintiff against Defendant REM Cousins.

35. Plaintiff has a valid and legally protected trademark in the name "Burrito Gallery" and the Marks. Plaintiff's first use of the "Burrito Gallery" Mark in commerce occurred in 2004, in connection with its Burrito Gallery restaurant which offers unique burritos, tacos, and other fresh Mexican food in an atmosphere featuring music, local art and a full-service bar. Burrito Gallery's first use of the Mark occurred 6 years prior to REM Cousins' first licensed use of the Mark and 11 years prior to REM Cousins' recent unlicensed and unauthorized use of the Marks through its restaurant. Burrito Gallery has continuously used the Marks since 2004.

36. REM Cousins has violated 15 U.S.C. §1125(a) in that it has on or in connection with its goods or services continually used the Marks—namely, through the continued operation of the Jacksonville Beach restaurant that uses Burrito Gallery's name, menu and other Marks—which

represents a false designation of origin, false or misleading description and/or misrepresentation of fact likely to cause confusion, mistake or deceive as to the affiliation, connection or association of Defendant's restaurant with Burrito Gallery and its restaurants.

37. REM Cousins is intentionally and willfully using the Marks in a manner that is identical or confusingly similar to Plaintiff's Marks, in commerce and in connection with the sale or advertising of goods and services available at REM Cousins' competing restaurant.

38. REM Cousins' use of the Marks, or a name and Mark that is identical or confusingly similar to the Marks, is likely to cause confusion, mistake or deception among consumers as to the affiliation, connection or association of REM Cousins and its restaurant with the restaurants and services of Burrito Gallery.

39. REM Cousins' use of the Marks, or a name and mark that is identical or confusingly similar to the Marks, is likely to cause confusion, mistake or deception among consumers as to the origin, sponsorship or approval of REM Cousins' restaurant by Burrito Gallery.

40. Burrito Gallery demanded that REM Cousins immediately cease and desist all uses of any marks licensed to it under the License Agreement, which would include, but is not limited to, "Burrito Gallery Express" and/or "BGX." On information and belief, REM Cousins has been operating its restaurant under the name "Burrito Gallery" for some unknown period of time; REM Cousins has never held a license to use the name "Burrito Gallery."

41. As a direct and proximate result of REM Cousins' conduct, Burrito Gallery has suffered and will continue to suffer monetary damages.

WHEREFORE, Plaintiff, Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendant REM Cousins and in favor of Plaintiff for the following:

a. that REM Cousins' use of the Marks be adjudged to constitute unfair competition, false designation of origin and trademark infringement in violation of 15 U.S.C. § 1125(a);

b. granting, pursuant to 15 U.S.C. § 1117, an accounting, an award of REM Cousins' profits, and any other damages should the court find the award based on profits inadequate;

c. granting, pursuant to 15 U.S.C. § 1117, an award of attorneys' fees and costs;

d. granting, pursuant to 15 U.S.C. § 1118, an order temporarily and permanently enjoining and directing REM Cousins and its respective officers, agents, servants, employees and/or all other persons, business or entities acting in concert or participation with it, to deliver up for destruction all promotional materials, building facades, handouts, advertisements, labels, signs, prints, packages, wrappers, photographs, videos, truck or vehicle paintings or logos, websites, internet marketing, software, business cards, or any other reproduction, copy of confusingly similar variations of Burrito Gallery's Mark, and all plates, molds, matrices, and other means of making or duplicating the same;

e. granting an award of damages in an amount sufficient to deter REM Cousins from engaging in unlawful conduct in the future, pre- and post-judgment interest, costs and attorneys' fees;

f. granting all further relief as this Court finds just and proper.

## COUNT II
## (Federal Unfair Competition, False Designation of Origin and Trademark Infringement Under 15 U.S.C. §1125(a) – Injunction)

42. Burrito Gallery realleges and incorporates by reference paragraphs 1 through 32, and paragraphs 35 through 40, as if fully stated herein.

43. This is a claim for injunctive relief under the Lanham Act, 15 U.S.C. § 1051 *et seq.* by Burrito Gallery against Defendant REM Cousins.

44. As a direct and proximate cause of REM Cousins' conduct, Burrito Gallery has suffered and will continue to suffer irreparable injury to its business, reputation and goodwill.

45. There is a likelihood of deception to consumers and consequent injury to Burrito Gallery due to REM Cousins' violations of the Lanham Act, and Burrito Gallery is likely to succeed on the merits.

46. REM Cousins will suffer no harm should it be required to cease the unlawful operation of the beach restaurant and unauthorized and unlawful use of the Marks, but any harm it may suffer is greatly outweighed by the injury to Burrito Gallery should injunction not be granted.

47. Burrito Gallery has no adequate remedy at law.

48. The issuance of a temporary and permanent injunction is in the public interest.

WHEREFORE, Plaintiff, Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendant REM Cousins and in favor of Burrito Gallery for the following:

a. that REM Cousins' use of the Marks be adjudged to constitute unfair competition, false designation of origin and trademark infringement in violation of 15 U.S.C. § 1125(a);

b. granting, pursuant to 15 U.S.C. §§ 1116 and 1125, a temporary and permanent injunction prohibiting REM Cousins and its respective officers, agents, servants, employees and/or all other persons, businesses or entities

acting in concert or participation with it from (1) using the Marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases, or designs, in commerce or in connection with any business or for any other purpose (including but not limited to on building facades, print advertising, television or radio advertising, business names, websites or domain names); (2) transferring, assigning, selling or attempting the disposition of the Marks to any third party; and (3) whatever other injunctive relief this Court finds reasonable and just according to the principles of equity;

c. granting, pursuant to 15 U.S.C. § 1117, an award of attorneys' fees; and

d. granting all further relief this Court finds just and equitable.

**COUNT III**
**(Determination of Registration Rights under 15 U.S.C. § 1119)**

49. Burrito Gallery realleges and incorporates by reference paragraphs 1 through 32 as if fully stated herein.

50. This is an action pursuant to 15 U.S.C. § 1119 seeking the Court's determination that REM Cousins has no right to register the word mark "Burrito Gallery."

51. REM Cousins falsely and wrongfully applied for registration of the "Burrito Gallery" mark with the USPTO on April 1, 2015, Serial No. 86583840. The USPTO issued a Notice of Allowance to use the "Burrito Gallery" mark on October 13, 2015. *See* Exhibit C.

52. On information and belief, REM Cousins' manager, Monroy, submitted as part of and in connection with the Application, a declaration, under oath, attesting to the truth of the statement that "no other person has the right to use the mark in commerce..." and being fully warned that "willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the

validity of the application or any registration resulting therefrom" and declaring that attesting to the truth of his, and REM Cousins', statements. A copy of the Application is attached as **Exhibit "F"**.

53. REM Cousins' statements made under oath in the Application were willfully and patently false, and REM Cousins' knew the statements to be false. REM Cousins, Escriba and Monroy, knew that Burrito Gallery owned common law rights in the "Burrito Gallery" name and the other Marks through its continued use thereof, and acknowledged the same in the License Agreement. REM Cousins also concealed from, and failed to reveal to the USPTO, that it was not the owner of the "Burrito Gallery" mark and that it had no right to seek registration or any use of the mark not authorized in the License Agreement (which it was already in default under).

54. Accordingly, REM Cousins has no right to register the "Burrito Gallery" mark and REM Cousins' Application for registration of the "Burrito Gallery" mark, Serial No. 86583840, should be cancelled or abandoned and REM Cousins should be prevented from registering the "Burrito Gallery" mark, for its fraud on and/or false representations made to the USPTO that were material and resulted in and caused the Notice of Allowance to issue and remain in effect.

55. Burrito Gallery is harmed by REM Cousins' seeking to falsely register for the "Burrito Gallery" Mark and the Application submitted by REM Cousins which resulted in the Notice of Allowance, procured by false and fraudulent statements and representations, should be declared null and void, *ab initio*, and of no effect, and the Court should determine that REM Cousins has no right to register the "Burrito Gallery" Mark.

WHEREFORE, Plaintiff Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendant REM Cousins and in favor of Plaintiff declaring that REM Cousins has no right to register the "Burrito Gallery" Mark and declaring Plaintiff's right to seek registration of the "Burrito Gallery" Mark.

**COUNT IV**
**(Common Law Trademark Infringement)**

56. Burrito Gallery realleges paragraphs 1 through 32, and paragraphs 35 through 40, as if fully stated herein.

57. Defendant REM Cousins' conduct as described in the general allegations—specifically paragraphs 21 through 32—and in paragraphs 35 through 40, constitutes trademark infringement and passing off in violation of the common law of the state of Florida.

58. Burrito Gallery Marks have priority under Florida law because Burrito Gallery was the first to use the Marks in commerce and because Burrito Gallery's use has been continuous.

59. Burrito Gallery's Marks are distinctive, as that term is defined under the Lanham Act and Florida's common law.

60. REM Cousins' acts of trademark infringement constitutes intentional misconduct and/or gross negligence within the meaning of Fla. Stat. § 768.72(2)(a)-(b), entitling Burrito Gallery to both compensatory damages in an amount to be determined by the Court but in no event less than $75,000, and punitive damages under the common law and under Fla. Stat. § 768.72.

WHEREFORE, Plaintiff Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendant REM Cousins and in favor of Plaintiff for the following:

a. that Defendant REM Cousins' use of the Marks be adjudged to constitute false designation of origin and trademark infringement in violation of Florida common law;

b. granting an award of damages in an amount sufficient to deter the REM Cousins from engaging in unlawful conduct in the future, pre- and post-judgment interest, costs and attorneys' fees;

c. granting an award of punitive damages in an amount to be determined by the Court;

d. granting all further relief this Court finds just and proper.

**<u>COUNT V</u>**
**(Deceptive and Unfair Trade Practices, Fla. Stat. § 501.201 *et seq.*)**

61. Burrito Gallery realleges paragraphs 1 through 32, and paragraphs 35 through 40, as if fully stated herein.

62. At all times relevant, REM Cousins, Monroy and Escriba were engaged in trade or commerce as that term is defined in Fla. Stat. § 501.203(8).

63. The conduct of REM Cousins, Monroy and Escriba as described herein, including without limitation their unlicensed and unauthorized use of the Marks, the false application for registration of the "Burrito Gallery" mark, the improper demands for payment by Burrito Gallery for "use" of Burrito Gallery's own Marks, and the usurpation of Burrito Gallery's corporate opportunities to expand and franchise the Burrito Gallery restaurant and to register its marks, constitutes deceptive and unfair trade practices as defined in Fla. Stat. § 501.201 *et seq* and the law interpreting that statute.

64. REM Cousins, Monroy and Escriba's conduct was willful in that they knew or should have known the acts described in paragraph 64 and in the incorporated allegations were unfair or deceptive.

65. As a direct and proximate cause of Defendants' conduct, Burrito Gallery has suffered damages.

66. Burrito Gallery is entitled to recover its attorneys' fees and costs as provided by Fla. Stat. § 502.2105.

WHEREFORE, Plaintiff Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendants REM Cousins, Monroy and Escriba and in favor of Burrito Gallery for the following:

a. declaring that Defendants' conduct has violated, is violating and/or is likely to violate Fla. Stat. § 501.201 *et seq.*;

b. enjoining Defendants from continuing from further violations of Fla. Stat. § 501.201 *et seq*, including using the "Burrito Gallery" mark;

c. granting Burrito Gallery an award of actual damages, together with interest, attorneys' fees and costs;

d. granting such other and further relief as this Court finds just and proper.

**COUNT VI**
**(Breach of Licensing Agreement)**

67. Burrito Gallery realleges paragraphs 1 through 32 as if fully stated herein.

68. This is an action for breach of contract and damages.

69. On May 17, 2010, the parties entered into the License Agreement. Pursuant to the License Agreement, Burrito Gallery licensed to REM Cousins the right to use its intellectual property including the name "Burrito Gallery Express" and "BGX."

70. Pursuant to the License Agreement, REM Cousins was required to pay Burrito Gallery, on or before the 20th day of each month, the sum of 7% of the total monthly sales for REM Cousins for the prior month.

71. REM Cousins is also required to provide financial documentation to Burrito Gallery pursuant to paragraph 11 of the Agreement.

72. REM Cousins has materially breached the Agreement by failing to pay the license fees required by the Agreement, by failing to provide Burrito Gallery the financial reporting documentation required by the Agreement, and by using the Marks beyond the scope of and its authority under the Agreement. Further, REM Cousins' registration of the "Burrito Gallery" mark reaches the License Agreement since it is in direct contravention of the acknowledgement of Burrito Gallery's ownership of the Marks.

73. As a direct and proximate result of REM Cousins' breaches, Burrito Gallery has suffered damages.

WHEREFORE, Plaintiff, Burrito Gallery & Bar, respectfully requests this Court enter judgment against REM Cousins and in favor of Burrito Gallery for money damages for breach of the License Agreement together with the costs of this action, and for all other relief this Court finds just and proper.

**COUNT VII**
**(Injunctive Relief)**

74. Burrito Gallery realleges paragraphs 1 through 32 as if fully stated herein.

75. This is an action for injunction to prevent REM Cousins' unauthorized use of Burrito Gallery's trademarks and proprietary information.

76. Pursuant to the License Agreement, REM Cousins was granted a license to use propriety information belonging to Burrito Gallery.

77. Paragraph 4 of the License Agreement provides that Burrito Gallery is the owner of the Marks and the License Agreement grants a license to REM Cousins to utilize certain of the Marks so long as it is not in default of the Agreement.

78. REM Cousins has defaulted on the License Agreement and Gallery and Burrito Gallery have demanded that REM Cousins cease and desist from using the intellectual property that belongs to Burrito Gallery. REM Cousins has refused to do so.

79. REM Cousins has a bad faith intent to profit from its unauthorized use of the Marks, including, but not limited to, the "Burrito Gallery Express," "BGX," and "Burrito Gallery" marks, as well as the process and menu items belonging to Burrito Gallery.

80. REM Cousins has registered for and used the "Burrito Gallery" mark owned and first used by Burrito Gallery, and which is identical or confusingly similar to Burrito Gallery's Mark.

81. There is a likelihood of deception to consumers and consequent injury to Burrito Gallery due to REM Cousins' violations of the License Agreement and unlicensed/unauthorized use of the above described marks, and Burrito Gallery is likely to succeed on the merits.

82. As a direct and proximate result of REM Cousins' conduct, Burrito Gallery has suffered and will continue to suffer irreparable injury to its business, reputation and goodwill.

83. REM Cousins will suffer no harm should it be required to cease the unlawful operation of the beach restaurant and unauthorized and unlawful use of the Marks, but any harm it may suffer is greatly outweighed by the injury to Burrito Gallery should injunction not be granted.

84. Plaintiff has no adequate remedy at law.

85. The issuance of an injunction is in the public interest.

WHEREFORE, Plaintiff, Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendant REM Cousins and in favor of Plaintiff granting a temporary and permanent injunction prohibiting REM Cousins and its respective officers, agents, servants, employees and/or all other persons, businesses or entities acting in concert or participation with it (including Defendants Escriba and Monroy) from using in any way Plaintiff's "Burrito Gallery" name or the Marks or any confusingly similar variations thereof, and for all other relief this Court finds just and proper.

**COUNT IX**
**(Breach of Fiduciary Duty Against Escriba and Monroy)**

86. Gallery and Burrito Gallery reallege paragraphs 1 through 32 as if fully stated herein.

87. This is an action for breach of fiduciary duty against Defendants Escriba and Monroy.

88. After attempting to steal certain business opportunities for themselves, pursuant to the paragraph 6 of the Agreement, Escriba and Monroy acknowledged their fiduciary duty to Gallery. Escriba and Monroy acknowledged their intention to "allow business opportunities that

may arise in the future to be utilized" by Gallery or Burrito Gallery, and further agreed that they would not attempt to utilize any potential business opportunity belonging to Gallery or Burrito Gallery for their own personal gain. Exhibit B at ¶ 6.

89. Escriba and Monroy breached their fiduciary duty to Gallery and Burrito Gallery by virtue of their actions, individually and through REM Cousins, which were in direct contravention of the License Agreement. Among Escriba and Monroy's breaches are their attempt to steal the "Burrito Gallery" mark for their own use through REM Cousins, their refusal to cease and desist in their operation and use of the Marks, their insistence that Gallery and/or Burrito Gallery pay them sums of money in order to use the Marks, REM Cousins' failure to pay the license fees required by the License Agreement, and REM Cousins' failure to provide the required financial reporting under the License Agreement. In short, since the execution of the License Agreement, Escriba and Monroy have operated in every way for their own benefit and to the detriment of both Gallery and Burrito Gallery, just as they did at the time of the execution of the License Agreement.

90. As a direct and proximate result of Escriba's and Monroy's breach of their fiduciary duties, Gallery and Burrito Gallery have suffered damages.

WHEREFORE, Plaintiffs, Gallery Restaurant Group, LLC and Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against Defendants Escriba and Monroy and in favor of Plaintiff for damages for breach of their contractual fiduciary duties, and for all other relief this Court finds just and proper.

## COUNT X
## (Unjust Enrichment against all Defendants)

91. Burrito Gallery realleges paragraphs 1 through 32 as if fully stated herein.

92. This is an action for unjust enrichment against all Defendants.

93. As a direct and proximate result of Defendants' conduct complained of herein, Burrito Gallery has suffered and will continue to suffer loss of reputation and pecuniary damages.

94. Burrito Gallery has created value and generated goodwill in the Marks.

95. Defendants have traded on this value and goodwill, and on Burrito Gallery's reputation through deceptive, unfair and unlawful practices and trademark infringement in its unlicensed and unauthorized use of the Marks.

96. As a result of Defendants' actions, a benefit has been bestowed upon Defendants and Defendants have realized and generated economic and other benefits at Burrito Gallery's expense.

97. Burrito Gallery has not authorized, acquiesced in or otherwise agreed to Defendants' use of its Marks beyond the scope of the Licensing Agreement, including Defendants' false and improper attempt to register for the "Burrito Gallery" Mark.

98. It would be inequitable for Defendants to retain the benefits accrued through their unlawful conduct.

WHEREFORE, Plaintiff, Burrito Gallery & Bar, LLC, respectfully requests this Court enter judgment against all Defendants and in favor of Plaintiff for damages, interest, and for all other relief this Court finds just and equitable, including a constructive trust.

Respectfully submitted this 10th day of February, 2016.

**HOLBROOK, AKEL, COLD,**
**RAY & REICHARD, P.A.**

/s/ Hank Holbrook
H. Leon Holbrook, III, Esquire
Trial Counsel
Florida Bar No. 319910
One Independent Drive, Suite 2301
Jacksonville, Florida 32202
(904) 356-6311
(904) 356-7330 (fax)
Primary: hholbrook@hacsr.com

**GUNSTER, YOAKLEY & STEWART, P.A.**

/s/ William E. Adams, Jr.
William E. Adams, Jr.
Florida Bar No.: 467080
Megan E. Kelberman
Florida Bar No.: 106426
225 Water Street, Suite 1750
Jacksonville, Florida 33202
(904) 354-1980
(904) 354-2170 (fax)
Primary: badams@gunster.com
Primary: mkelberman@gunster.com